IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:17-bk-01300 |
| DART MUSIC, INC., | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

**MOTION FOR ENTRY OF EMERGENCY INTERIM AND
FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN SECURED
POST-PETITION FINANCING PURSUANT TO SECTIONS
364(c)(1) AND 364(c)(2) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 4001**

The above-captioned Debtor (the "**Debtor**"), as debtor-in-possession, by and through its undersigned attorneys, hereby moves this Court for emergency interim and final orders, pursuant to §§ 364(c)(1) and 364(c)(2) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to obtain secured, post-petition credit under a Debtor-In-Possession Secured Promissory Note (the "**DIP Loan**") with Joseph Galante[1] ("**Galante**"). In support of this Motion, the Debtor respectfully represents as follows:

**BACKGROUND**

1. On February 27, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, and has continued to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] Mr. Galante is a current member of Dart Music, Inc.'s board of directors.

2. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, nor has any creditors' or other official committee been appointed herein pursuant to Section 1102 of the Bankruptcy Code.

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code Sections 364(c)(1) and 364(c)(2) and Rule 4001 of the Bankruptcy Rules.

## THE DEBTOR'S PRE-PETITION FINANCING ARRANGEMENTS

4. Beginning in September of 2015, Dart raised $1.6 million in funding by issuing Convertible Promissory Notes (the "**Convertible Notes**") to various individual investors (the "**Noteholders**"). The Convertible Notes bear interest at the rate of 6% per annum and mature two years from the date of issuance. Two (2) of the Convertible Notes matured on February 23, 2017 (the "**Matured Convertible Notes**"), while the remaining thirteen Convertible Notes are set to mature on June 5, 2017.

5. The following table details the various Convertible Notes and the holders of such notes:

| 6% Convertible Notes | | | | | |
|---|---|---|---|---|---|
| Noteholder | Principal Amount | Issued Date | Maturity Date | Interest Accrued | Current Balance (P&I)[2] |
| Stacy Stinson | $500,000 | 2/23/2015 | 2/23/2017 | $61,615.65 | $561,615.65 |
| Rob Harig | $200,00 | 2/23/2015 | 2/23/2017 | $24,646.26 | $224,646.26 |
| Rob Harig | $300,000 | 6/2/2015 | 6/5/2017 | $31,530.39 | $331,530.39 |
| Joe Galante | $25,000 | 6/2/2015 | 6/5/2017 | $2,627.53 | $2,627.53 |
| David Furse | $50,000 | 6/2/2015 | 6/5/2017 | $5,255.06 | $55,255.06 |
| George Hoffman | $25,000 | 6/2/2015 | 6/5/2017 | $2,627.53 | $27.627.53 |
| Julia Polk | $25,000 | 6/5/2015 | 6/5/2017 | $2,613.91 | $27,613.91 |

---

[2] This column reflects the current balance of the Convertible Notes as of January 30, 2017.

| Stryker Warren | $25,000 | 6/8/2015 | 6/5/2017 | $2,600.30 | $27,600.30 |
| --- | --- | --- | --- | --- | --- |
| Stacy Stinson | $100,000. | 12/11/2015 | 6/5/2017 | $7,076.99 | $107,076.99 |
| Rob Harig | $100,000 | 12/11/2015 | 6/5/2017 | $7,076.99 | $107,076.99 |
| Joe Galante | $50,000 | 12/11/2015 | 6/5/2017 | $3,538.50 | $53,538.50 |
| David Furse | $50,000 | 12/11/2015 | 6/5/2017 | $3,538.50 | $53,538.50 |
| Stuart McWhorter | $25,000 | 12/11/2015 | 6/5/2017 | $1,769.25 | $26,769.25 |
| Yvonne Sullivan | $25,000 | 12/11/2015 | 6/5/2017 | $1,769.25 | $26,769.25 |
| Mark Montgomery | $100,000 | 12/1/2016 | 6/5/2017 | $991.10 | $100,991.10 |

6. Beginning in 2016, the Debtor began seeking additional capital understanding that the Convertible Notes were soon coming due. On or about January 3, 2017, the Debtor was presented with a term sheet from ICG Ventures LLC ("**ICG**") whereby the Debtor would, among other things, issue Shares of Series Seed Preferred Stock of the company to ICG (or one of its affiliates) at an original share price of $22.90 based on a pre-money fully-diluted valuation of $4 million, calculated based upon the capitalization of the Debtor, inclusive of an available post-closing option pool of 25%. In exchange, ICG would provide the Debtor with $500,000 in funding (the "**ICG Term Sheet**").

7. Shortly thereafter, the ICG Term Sheet was presented to the Noteholders. The Debtor presented a conversion proposal to the Noteholders that would permit the Debtor to execute on the ICG Term Sheet in order to provide the Debtor with the short term liquidity it desperately needed (the "**Funding Proposal**"). The Funding Proposal was accepted by the following Noteholders: (1) Joe Galante, (2) Stuart McWhorter, (3) Mark Montgomery, and (4) George Hofman. Unfortunately, however, the Funding Proposal was rejected by the following Noteholders: (1) Rob Harig, (2) Stacy Stinson, (3) Julia Polk, (4) Stryker Warren, (5) David Furse, and (6) Yvonne Sullivan (collectively, the "**Rejecting Noteholders**").

8. Thereafter, the Debtor continued to engage the Rejecting Noteholders in discussions aimed at finding a solution to the Debtor's immediate liquidity needs such that the Debtor could continue the upward trajectory that it had experienced since its original founding.

9. However, despite its best efforts, the Debtor was unsuccessful in reaching a resolution with the Rejecting Noteholders. What's more, on February 24, 2017, counsel for Stacy Stinson and Rob Harig, two of the Rejecting Noteholders (the "**Matured Noteholders**") sent a letter to counsel for the Debtor declaring that such notes had matured and demanding payment on such notes by no later than March 3, 2017 (the "**Payment Demand**").

## THE DEBTOR'S NEED FOR FINANCING

10. It is essential to the continued operation of the Debtor's business that it obtains post-petition financing to pay its day-to-day operating expenses and generally meet its ongoing working capital and liquidity needs. Without immediate access to post-petition financing, the Debtor will be unable to fund necessary operating expenses and will, undoubtedly, be forced to liquidate.

11. Obtaining adequate levels of financing is particularly crucial at this time not only to provide short-term liquidity, but to avoid wasting the Debtor's management's attention with drawn-out disputes with the Matured Noteholders and instead focus on the day-to-day operations of the Debtor and growing and expanding the Debtor's business.

12. In short, the immediate access to acceptable levels of post-petition financing is the life-blood on which the Debtor's ability to survive as a going concern depends. Absent the availability of such financing, the Debtor will be unable to pay the services that are essential to the maintenance of its operations and the preservation of the going concern value of its business. As set forth below, the proposed DIP Loan with Galante is on the best terms

obtainable, should provide sufficient financing to meet the Debtor's cash needs during its Chapter 11 case and should be sufficient to enable the Debtor to confirm a plan of reorganization that will maximize returns for all creditors.

### THE DEBTOR'S POST-PETITION FINANCING ARRANGEMENTS

13.     As a result of extensive, arm's length negotiations conducted by the Debtor and Galante, Galante has agreed to make a post-petition loan to the Debtor in the amount of $50,000.00. The specific terms and conditions of the DIP Loan are set forth in the attached Debtor-In-Possession Secured Promissory Note dated February 13, 2017 and attached hereto as Exhibit "A".

14.     The principal elements of the DIP Loan are summarized below:[3]

(a)     Loan:

(i)     Amount – $50,000.00

(ii)    Term – Outstanding principal balance and accrued interest shall be due and payable thirty (30) days after the Debtor's discharge from this bankruptcy

(iii)   Interest Rate – Six Percent (6%)

(b)     The following collateral will secure the DIP Loan:

(i)     all properties, assets and rights of the Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof

### NECESSARY SHOWINGS UNDER SECTION 364

15.     The indebtedness to Galante as represented by the DIP Loan will be entitled to superpriority status under Bankruptcy Code Section 364.

16.     Section 364 of the Bankruptcy Code provides, in relevant part, as follows:

---

[3] The following description of the terms of the DIP Loan is intended solely to provide the Court and interested parties with a brief overview of the significant terms of the DIP Loan. The Court is respectfully referred to Exhibit "A" hereto for the complete and detailed terms of the DIP Loan.

(a) If the trustee is authorized to operate the business of the debtor under sections 721, 1108, 1304, or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

   1. with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

   2. secured by a lien on property of the estate that is not otherwise subject to a lien; or

   3. secured by a junior lien on property of the estate that is subject to a lien.

17. Given that the Debtor has previously submitted the ICG Term Sheet and the Funding Proposal to the Noteholders (which were rejected), and also given that the Payment Demand was made on the Debtor by the Matured Noteholders, the Debtor is unable to obtain post-petition working capital financing on an unsecured basis, pursuant to Bankruptcy Code Sections 364(a) or (b). Accordingly, it was necessary for the Debtor to obtain financing under Section 364(c) of the Bankruptcy Code.

18. The Debtor believes that the terms and conditions of the DIP Loan are fair and reasonable under the circumstances of these cases.

19. The Debtor intends to utilize the proceeds of the DIP Loan to fund working capital needs.

20. The terms of the DIP Loan were negotiated in good faith and at arm's length, with all parties represented by counsel. Accordingly, Galante should be provided with the benefit and protection of Section 364(e) of the Bankruptcy Code, such that if any of the provisions of this Court's Emergency Interim Order or Final Order approving the DIP Loan are later modified, vacated, stayed or terminated by subsequent order of this or any other Court, Galante shall be fully protected with respect to any amounts previously disbursed.

## NEED FOR IMMEDIATE BORROWINGS TO AVOID IRREPARABLE HARM

21. A minimum of fourteen (14) days' notice is required before a final hearing on this Motion may commence. However, under Bankruptcy Rule 4001(c)(2), the Court "may conduct a hearing before such 14-day period expires, but may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

22. It is essential to the continued operation of Debtor's business that it be authorized by this Court to take a disbursal of funds. Such funds are urgently needed to meet all of the Debtor's working capital and other liquidity needs. In the absence of immediate post-petition financing, the Debtor's attempt to reorganize would be immediately and irreparably jeopardized.

23. Accordingly, the Debtor respectfully request that, pending a final hearing on the DIP Loan, the DIP Loan's terms and provisions be implemented and approved on an emergency interim basis, to the extent of authorizing the Debtor to borrow $50,000.00 from Galante under the DIP Loan, on the terms and subject to the conditions set forth therein.

24. As is apparent from the foregoing, the emergency interim relief requested in this Motion, pending the Final Hearing, is necessary, appropriate and fully warranted, and is essential to avoid immediate and irreparable harm to the Debtor.

## NOTICE WITH RESPECT TO EMERGENCY INTERIM FINANCING REQUEST

25. The Debtor submits that the exigencies of the Debtor's Chapter 11 case, the timing of the filing of the Debtor's Chapter 11 petition, and the Debtor's immediate need for funds do not permit broad notice of the Debtor's request for emergency interim financing under this Motion, and therefore requests that any such notice be limited to facsimile or telecopy notice to (i) the Office of the United States Trustee, (ii) the attorneys for Galante, (iii) the Noteholders, and (iv) the Debtor's twenty largest unsecured creditors.

### NOTICE WITH RESPECT TO FINAL FINANCING ORDER

26. No trustee or creditors' committee has been appointed in this case. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that it be authorized to provide notice of the final hearing on this Motion by serving a copy of the Motion, together with all exhibits thereto and the Emergency Interim Order, by hand or by overnight mail or courier service, upon (i) the Office of the United States Trustee; (ii) the attorneys for Galante; (iii) the Noteholders; (iv) all parties who have timely filed requests for notice under Bankruptcy Rule 2002; and (v) counsel to any official committee of unsecured creditors in this case or, barring timely appointment of such a committee, the Debtors' twenty (20) largest known unsecured creditors.

27. The cost of mailing a notice to all creditors in this Chapter 11 case would be exceedingly expensive, and would not, in the Debtor's view, confer any material benefit on the Debtor, its estate or its creditors. Accordingly, and in light of the urgency of the relief requested, the Debtor respectfully requests that any further notice of the final hearing, and of the relief requested herein, other than as expressly provided for in this Motion, be dispensed with and waived.

28. No previous application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that this Court issue and enter an Order:

(a) authorizing Debtor to enter into the DIP Loan;

(b) authorizing Debtor to immediately obtain credit in an amount of $50,000.00 as described herein and in the DIP Loan;

(c) authorizing Debtor to take such acts and to execute such documents as may be required to consummate the DIP Loan and modifying the automatic stay to the extent required to accomplish same; and

(d) providing such other and further relief as the Court deems just and proper.

Dated: March 1, 2017.

Respectfully submitted,

NELSON, MULLINS, RILEY & SCARBOROUGH LLP

By: */s/ Shane G. Ramsey*
Shane G. Ramsey (BPR # 35528)
Jason I. Epstein (BPR # 017970)
John T. Baxter (BPR # 35405)
150 Fourth Avenue, North, Suite 1100
Nashville, TN 37219
Phone: (615) 664-5355
E-Mail: shane.ramsey@nelsonmullins.com
jason.epstein@nelsonmullins.com
john.baxter@nelsonmullins.com
*Attorneys for Debtor-in-Possession*