# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:17-bk-01300 |
| DART MUSIC, INC., | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

## EXPEDITED MOTION OF THE DEBTOR FOR ORDER AUTHORIZING DEBTOR'S PAYMENT OF CREATOR AND RIGHTS HOLDER ROYALTIES HELD IN TRUST

The above-captioned Debtor (the "**Debtor**" or "**Dart**"), as debtor-in-possession ("**DIP**"), by and through its undersigned attorneys, hereby moves the Court for entry of an order, pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order granting the Debtor authority to make payments from its DIP Royalty Account when, and if, requested by a creator or rights holder.

### CERTIFICATION OF NEED FOR EXPEDITED RELIEF UNDER LBR 9075-1

1. The Debtor opened up two DIP bank accounts on March 3, 2017: a general operating account (the "**DIP Operating Account**") and an creator and rights holder royalty account (the "**DIP Royalty Account**"). While the DIP Operating Account will serve as the Debtor's general operating account during this chapter 11 case, the DIP Royalty Account serves a different purpose: to hold funds in trust for creator and rights holders that have contracted with the Debtor. The Debtor is currently holding $28,245.26 in trust for certain creator and rights holders in its DIP Royalty Account. The Debtor needs to be able to disburse these funds, at the request of a creator or rights holder, in order to maintain its good relationships with these third parties and continue to operate its business.

2. Because the funds in the DIP Royalty Account are held in trust for the various creators and rights holders with whom the Debtor works, these funds must be available at the request of such persons. As such, the Debtor needs emergency relief regarding its ability to disburse funds from the DIP Royalty Account to ensure that when a creator or rights holder requests the release of these funds, there is no delay. Because the Debtor cannot predict precisely when a request will arise for the disbursement of these funds, the Debtor requests the immediate ability to disburse these funds, as they are requested.

3. Notice of this expedited motion will be served electronically via this Court's CM/ECF system. Further, the Debtor will serve this expedited motion by regular mail, email, and/or fax (as applicable) to the listed creditors on the list of the Debtor's twenty largest unsecured creditors and to the U.S. Trustee.

4. The Debtor requests that this Motion be heard at this Court's earliest convenient date and time.

5. In further support of this motion, the Debtor states as follows:

## JURISDICTION

6. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ l408 and 1409.

7. On February 27, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, and has continued to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2

8. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, nor has any creditors' or other official committee been appointed herein pursuant to Section 1102 of the Bankruptcy Code.

## BACKGROUND

9. The Debtor was formed in January of 2015 by founder and CEO, Chris McMurty. The Debtor solves complex metadata problems for the music industry. Digital music services such as Spotify, Soundcloud, Google Play and Apple Music are all impacted by the quality of the metadata delivered to them.

10. Moreover, the music industry is desperately seeking to shift to a model which would allow it to pay its creators and rights holders more accurately (*i.e.*, providing artists with the *true value* of the property they provide to consumers and corporations in the market place) as well as to provide such payment in the most timely manner possible—both of which have been a void in the market that Dart has, and will continue to, fill through its talented management, creative team, and other dedicated employees that continue to improve upon Dart's products and services each day. Indeed, it is a simple market reality that the outdated "blackbox payment" mechanisms that currently exist will be replaced, and metadata providers, with Dart leading the way, must set the example by providing the utmost transparency in how such payments are received, accounted for, and ultimately delivered to their true owners—the creators and rights holders. Such transparency and flawless execution of these services is paramount to Dart's mission, its go forward "brand value," and, ultimately, its ability to successfully reorganize and emerge from chapter 11 as a stronger company.

11. The Debtor introduced affordable distribution to classical artists in September 2015. Met with applause from both the classical community and the music industry at large, this

value proposition secured the company direct distribution deals with Apple, Google, Spotify, Amazon, and You Tube. Through ongoing discussions with these online music store customers, as well as numerous Labels, Performing Right's Organizations, publishers and others, the Debtor is building the "Music Metadata Engine" to respond to frustrations related to metadata issues that are both costly and time consuming.

12. On the Petition Date, the Debtor had bank accounts with CNB, including funds held in account number *****5372, which the Debtor used as a royalty money market account ("**Royalty Account**"), and account number *****5321, which was the Debtor's operating account ("**Operating Account**," together with the Royalty Account, collectively referred to as the **Pre-Petition Accounts**"). The Debtor maintained its Royalty Account to hold in trust all monies that it received that were due and payable to third party creators and rights holders. The Operating Account held funds that the Debtor utilized for day-to-day operations. The monies in the Pre-Petition Accounts were always kept separate—the Debtor never commingled the funds.

13. On March 3, 2017, the Debtor opened up two DIP bank accounts with Wells Fargo: a general operating account (the "**DIP Operating Account**")—account number ******4046—and an artist royalty account (the "**DIP Royalty Account**," collectively with the DIP Operating Account, the "**DIP Accounts**")—account number ******9345.

14. These DIP Accounts will serve the same general purposes that the Debtor's Pre-Petition Accounts served. While the DIP Operating Account will serve as the Debtor's general operating account during this chapter 11 case, the DIP Royalty Account will serve to hold funds in trust for third-party creators and rights holders who are owed royalties.

15. As of the filing of this motion, the Debtor currently holds $28,245.26 in trust for certain creators and rights holders in its DIP Royalty Account. These funds were transferred

4

directly from the Debtor's pre-petition Royalty Account. These funds were never commingled with any of the funds in the Debtor's Operating Account.

16. The Debtor needs to be able to disburse these funds, at the creators' or rights holders' request, in order to maintain its good relationships with these creators and rights holders and to maintain the Debtor's mission and "brand value"—transparency and flawless execution of services.

## RELIEF REQUESTED

17. By this Motion, this Debtor seeks the ability to disburse funds from the DIP Royalty Account, either directly to the creators and rights holders or to an already-established PayPal account to which such creators and rights holders have access.

18. The ability to pay creators and rights holders their royalties is absolutely critical to the Debtor's reorganization efforts. Indeed, without the creators and rights holders, the Debtor cannot continue operation of its business and has no chance at success. This would not be in the best interest of the Debtor, its employees, or its creditors. Allowing the Debtor to protect its assets that generate the Debtor's very livelihood is consistent with the intent and purpose of an effective reorganization under chapter 11.

19. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under § 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's businesses. Specifically, the Court may use its power under § 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the

5

"doctrine of necessity"). *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) 77 (finding that § 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (holding that the bankruptcy court "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'")

20. Moreover, the Debtor submits that the funds held in the DIP Royalty Account are required to be collected from third parties and are held in trust by the Debtor for the creators and rights holders who are owed royalties. The Debtor then disburses these funds to the creators and rights holders. As such, the Debtor submits that the funds held in the DIP Royalty Account constitute trust fund obligations and do not constitute property of the Debtor's estate. *See Begier v. IRS,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.")

21. An implied trust is created when money is turned over to another and is intended to be used for a particular purpose. *In re H.L. Murray Drilling Co.*, 121 B.R. 485, 487 (Bankr. W.D. Pa. 1990) (*citing See In re Spring Meadow Trout Hatchery, Inc., 29 B.R. 615, 620 (Bankr.E.D.Pa.1983)).* Indeed, considering similar facts to those present here, the court in *H.L. Murray Drilling Co.* found such funds to be held in trust:

> The Funds were earmarked for use in a specific purpose—the completion of ten oil well projects for the defendants. The Funds were to be used and were used only for that purpose. These Funds were at all times segregated from other funds kept by the Debtor except when the funds were transferred to the Debtor's general operating account on October 4, 1984 for the sole purpose of transferring the

6

Case 3:17-bk-01300  Doc 20  Filed 03/07/17  Entered 03/07/17 15:46:11  Desc Main
Document  Page 6 of 8

funds to the Debtor's attorney to continue to be held in trust. The funds were not available for use in the Debtor's day-to-day operations.

*Id.* As such, disbursement of the funds held in the DIP Royalty Account will not harm the bankruptcy estate or any creditors.

22. Accordingly, the Debtor requests authority to pay from the Royalty Account when, and if, requested by a creator or rights holder.

WHEREFORE, having shown that it is necessary for the Debtor's very survival to use funds held in the DIP Royalty Account, the Debtor respectfully requests that the Court enter an order granting the Debtor authority to pay from the DIP Royalty Account when, and if, requested by a creator or rights holder and for such other relief as the Court may deem appropriate.

Dated: March 7, 2017.

Respectfully submitted,

NELSON, MULLINS, RILEY & SCARBOROUGH LLP

By: */s/ Shane G. Ramsey*
Shane G. Ramsey (BPR # 35528)
Jason I. Epstein (BPR # 017970
John T. Baxter (BPR # 35405)
150 Fourth Avenue, North, Suite 1100
Nashville, TN 37219
Phone: (615) 664-5355
E-Mail: shane.ramsey@nelsonmullins.com
jason.epstein@nelsonmullins.com
john.baxter@nelsonmullins.com
*Attorneys for Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

On March 7, 2017, the foregoing was served via CM/ECF on all parties consenting to electronic service in this case. The Debtor shall serve the same by the next business day by regular mail, email, and/or fax (as applicable) to (i) the Debtor's twenty largest unsecured creditors, and (ii) the Office of the United States Trustee.

/s/ Shane G. Ramsey
Shane G. Ramsey