# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:17-bk-01300 |
| DART MUSIC, INC., | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS APRIL 6, 2017**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: APRIL 18, 2017 AT 9:00 A.M.**
**AT THE CUSTOMS HOUSE, 701 BROADWAY, NASHVILLE, TN 37203, COURTROOM 1**

### NOTICE OF MOTION OF DEBTOR'S MOTION FOR
### ENTRY OF (I) AN ORDER APPROVING (A) BID PROCEDURES,
### (B) NOTICE OF SALE, AUCTION, AND SALE HEARING, (C) ASSUMPTION
### PROCEDURES AND RELATED NOTICES; AND (II) AN ORDER APPROVING THE
### SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Dart Music, Inc. has asked the court for the following relief: entry of an order approving (a) bid procedures, (b) notice of sale, auction, and sale hearing, (c) assumption procedures and related notices, and an order approving the sale of substantially all of the Debtor's assets.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the court to grant the attached motion by entering the attached order, or if you want the court to consider your views on the motion, then on or before the response date stated above, you or your attorney must:

1. File with the court your response or objection explaining your position. Please note: the Bankruptcy Court for the Middle District of Tennessee requires electronic filing. Any response or objection you wish to file must be submitted electronically. To file electronically, you or your attorney must go to the court website and follow the instructions at: <https://ecf.tnmb uscourts.gov>.

   If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy Court in person at: 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2. Your response must state the deadline for filing responses, the date of the scheduled hearing and the motion to which you are responding.

   If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. **THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE.** You may check whether a timely response has been filed by viewing the case on the court's website at <https://ecf.tnmb uscourts.gov>.

   If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the attached order granting that relief.

1

Dated:  March 16, 2017.

Respectfully submitted,

NELSON, MULLINS, RILEY &
SCARBOROUGH LLP

By:       */s/ Shane G. Ramsey*                    
          Shane G. Ramsey (BPR # 35528)
          Jason I. Epstein (BPR # 017970)
          John T. Baxter (BPR # 35405)
          150 Fourth Avenue, North, Suite 1100
          Nashville, TN  37219
          Phone:  (615) 664-5355
          E-Mail:  shane.ramsey@nelsonmullins.com
          jason.epstein@nelsonmullins.com
          john.baxter@nelsonmullins.com
          *Attorneys for Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:17-bk-01300 |
| DART MUSIC, INC., | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

**DEBTOR'S MOTION, PURSUANT TO 11 U.S.C. §§ 105, 363, 364, 365, 503 AND 507 AND FED. R. BANKR. P. 2002, 4001, 6004, 6006, 9008 AND 9014, FOR ENTRY OF (I) AN ORDER APPROVING (A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTION, AND SALE HEARING, (C) ASSUMPTION PROCEDURES AND RELATED NOTICES; AND (II) AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

The above-captioned Debtor (the *"Debtor"*), as debtor-in-possession, by and through its undersigned attorneys, hereby moves the Court for entry of an order approving (a) bid procedures, (b) notice of sale, auction, and sale hearing, (c) assumption procedures and related notices, and an order approving the sale of substantially all of the Debtor's assets.

The Debtor believes that conducting a fair and robust auction at this time will provide this estate with the best opportunity to maximize the value of its assets. At the same time, the Debtor will retain the right to exercise its fiduciary duties should a value-maximizing alternative materialize. Accordingly, the Debtor states as follows:[1]

### JURISDICTION

1.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Notwithstanding the filing of this Motion, the Debtor fully intends to continue its efforts to mediate in good faith with certain of the noteholders in an attempt to reach a consensual resolution that may enable the Debtor to confirm a Chapter 11 plan. The Debtor is filing this Motion at the current time for the reasons more fully set forth in the Notice (as defined below).

1

2. The bases for the relief requested herein are sections 105, 363, 364, 365, 503 and 507 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rules 2002, 4001, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), .

## BACKGROUND

### A.     The Chapter 11 Case

3. On February 27, 2017 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, and has continued to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, nor has any creditors' or other official committee been appointed herein pursuant to Section 1102 of the Bankruptcy Code.

5. A detailed description of the Debtor's businesses and the reasons for filing this chapter 11 case is set forth in the *Company Profile* [Dkt. No. 4]*, which was filed contemporaneously with the Debtor's voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. As set forth in the Company Profile, the commencement of this chapter 11 case was the result of certain of the Debtor's noteholders' refusal to reach an agreement regarding a funding proposal to provide the Debtor the short term liquidity it needed to deal with its promissory notes that were soon maturing (or had already matured).

7. Joseph Galante, a member of the Debtor's board of directors, agreed to offer the Debtor post-petition financing in the amount of $50,000 under a Debtor-In-Possession Secured Promissory Note to fund the Debtor's working capital needs.   On March 9, 2017, the Court

entered an *Interim Order Authorizing Debtor to Obtain and Utilize Its DIP Financing* [Dkt. No. 34].

### B. The Marketing Process

8.     On March 13, 2017, the Debtor filed its *Notice of Marketing of Assets and Potential Sale Thereof* [Dkt. No. 46] (***"Notice"***), whereby in the full exercise of its fiduciary duty, the Debtor began exploring an alternative transaction (any such transaction, an ***"Alternative Transaction")*** for the sale of any or all of the Debtor's assets, including its intellectual property *("**Assets**")*.   The Debtor began exploring an Alternative Transaction as a result of its inability, to date, to reach a consensual resolution with certain of the noteholders. This failure to promptly reach a consensual resolution could hinder the Debtor's ability to propose a chapter 11 plan.

9.     Indeed, a number of parties have already expressed an interest in acquiring the Debtor's Assets.  For instance, after the filing of the petition, the Debtor was contacted by six parties expressing an interest in acquiring the Assets. Further, the Debtor has identified an additional six parties which are known to the Debtor or that operate in the same or similar industry as the Debtor that may have an interest in pursuing an Alternative Transaction. The Debtor further intends to publish notice of the sale in *USA Today*.   Moreover, the Debtor will continue to actively market the Assets through and including the Auction (defined below).

10.     In light of all of the above, the Debtor believes that the Bid Procedures and the Auction will afford the Debtor the best opportunity to test the market and maximize value of its Assets.

3

## RELIEF REQUESTED

11.     Pursuant to Bankruptcy Code sections 105, 363, 364, 365, 503 and 507 and Bankruptcy Rules 2002, 4001, 6004, 6006, 9008, the Debtor respectfully requests that the Court grant the following relief in connection with the sale (the *"Sale Transaction"*) of substantially all of the Debtor's Assets and related transactions to the bidder who submits the highest or otherwise best offer at the conclusion of the Auction, which bidder may be selected by the Debtor or party a party otherwise authorized by the Court as the winning bidder (the *"Successful Bidder"*).

12.     *First,* the Debtor request entry of a *"Bid Procedures Order,"* substantially in the form attached hereto as <u>Exhibit 1,</u> which will authorize and approve, among other things: (i) the procedures (the *"Bid Procedures"*) for the conduct of the auction (the *"Auction"*) of the Assets as outlined herein; (ii) the procedures for the assumption and assignment of certain contracts and leases (the *"Assumption Procedures"*) to the Successful Bidder and the resolution of any objections thereto and related notices; (iii) the scheduling of a hearing to approve any such Sale Transaction with respect to any bid accepted by the Debtor (the *"Sale Hearing"*).

13.     *Second,* the Debtor requests entry of an order (the *"Sale Order"*) substantially in the form to be filed with the Court on or prior to the Sale Hearing, that will, *inter alia,* approve (i) the sale of the Assets pursuant to Bankruptcy Code sections 105, 363(b), (f), and (m), and 365 and Bankruptcy Rules 6004, 6006, 9008, and 9014 free and clear of all liens, claims, encumbrances, and other interests; and (ii) the assumption and assignment of certain executory contracts and unexpired leases related to the Assets and the Sale Transaction pursuant to Bankruptcy Code sections 363 and 365.

**C.**    **Notice of Sale, Auction, Sale Hearing, and Related Deadlines**

14.    The Debtor proposes the following notice and other procedures to be implemented in connection with the sale process:

(a)    <u>Notice of Sale, Auction, and Sale Hearing:</u> Within five (5) business days after entry of the Bid Procedures Order, the Debtor (or its agents) shall:

    i.  Provide notice of the sale by email, mail, facsimile, or overnight delivery service, upon: (a) the Office of the United States Trustee for the Middle District of Tennessee; (b) all known creditors and parties in interest of the Debtor; and (c) all known entities that have previously expressed, or who the Debtor believes may express, a bona fide interest in purchasing the Assets (collectively, the ***"Sale Notice Parties");***

    ii.  Publish the Sale Notice on one occasion in *USA Today;* and

    iii.  Cause the Sale Notice to be published on www.dartdata.io (the ***"Website").***

(b)    <u>Date, Time, and Place of Auction:</u> The Debtor proposes that the Auction be conducted at the offices Nelson, Mullins, Riley, & Scarborough, 150 Fourth Avenue, North, Suite 1100, Nashville, TN 37219 on a date approved by the Court commencing **approximately thirty-five (35) days after entry of the Bid Procedures Order at 9:00 a.m. (prevailing Central Time).**

(c)    <u>Date, Time, and Place of Sale Hearing:</u> The Sale Hearing shall be conducted by the Bankruptcy Court approximately two (2) business days after the Auction. At the Sale Hearing, the Debtor will seek Bankruptcy Court approval of the Successful Bid and the Back-Up Bid. Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Proposed Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale because of the breach or failure on the part of the Successful Bidder, the Back-Up Bidder will be deemed the new Successful Bidder and the Debtor shall be authorized,

---

[2] Capitalized terms used but not defined in this section of the motion shall have the meanings ascribed to them in the Bid Procedures. The terms herein, however, are subject in all respects to the actual Bid Procedures

but not required, to close with the Back-Up Bidder on the Back-Up Bid without further order of the Bankruptcy Court.

(d) <u>Notice of Successful Bidder:</u> As soon as immediately practicable after the Auction, but no later than one (1) business day after conclusion of the Auction, the Debtor will provide electronic notice of the results of the Auction on the Court's docket.

(e) <u>Objection Deadline to Sale Order:</u> Objections to the relief sought in the Sale Order shall be in writing, filed and served so as to be actually received by the parties included in the *Order Pursuant to Sections 105(a) and (d) of the Bankruptcy Code and Bankruptcy Rules 1015(c), 2002(m)* no later than two (2) business days before the Sale Hearing, at 4:00 p.m. **(prevailing Central Time).**

(f) <u>Data Room:</u> Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor (it being understood that any person or entity who previously signed a confidentiality agreement in a form satisfactory to the Debtor shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and be transmitted by the person or entity wishing to become a Potential Bidder so as to be received by Nelson, Mullins, Riley, & Scarborough LLP, as counsel to the Debtor (the **"*Notice Parties").***

**D.     The Bid Deadline and Bid Procedures**

15.     The deadline for a Potential Bidder to submit bids shall be thirty (30) days from entry of the Bid Procedures Order (the ***"Bid Deadline")***.  Any Potential Bidder who fails to submit a bid so as to be received by the Notice Parties (as defined herein) in advance of the Bid Deadline shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

16.     Before the Bid Deadline, a Potential Bidder that desires to make a bid shall deliver copies of its bid in writing and executed by an individual or individuals authorized to bind the Potential Bidder. Each bid shall be served by courier, facsimile, e-mail or as otherwise specified by the Debtor to each of the Notice Parties.

6

17. The Debtor believes that the Bid Procedures, substantially in the form annexed as Exhibit A to the Bid Procedures Order and as further substantially outlined herein, are appropriate and provide the Debtor with the best opportunity to maximize the recovery for the Debtor and its estate in connection with the sale of the Assets. The Bid Procedures provide an appropriate framework for selling the Assets in an orderly fashion and will enable the Debtor to review, analyze and compare all bids received to determine which bid(s) are in the best interests of the Debtor and its stakeholders. Furthermore, the Debtor believes that the Bid Procedures are designed to ensure that the Debtor does not discourage any Potential Bidder from participating in the Auction and, thus, to maximize the value of the Assets.

18. The salient provisions of the Bid Procedures are:

(a) Assets to be Sold: The Auction shall consist of substantially all of the Assets used in the Debtor's business operations.

(b) Potential Bidder: A *"Potential Bidder"* is a person or entity that the Debtor determines is reasonably likely (based on relevant considerations as determined in good faith by the Debtor) to: (a) submit a *bona fide* offer; and (b) be able to consummate the proposed sale of the Assets (the *"Proposed Sale")* if selected as a Successful Bidder or Back-Up Bidder (as defined below).

(c) Due Diligence: The Debtor may afford each Potential Bidder the time and opportunity to conduct reasonable due diligence; *provided, however,* that neither the Debtor nor any of its representatives shall be obligated to furnish any due diligence information: (i) at any time to any person or entity other than a Potential Bidder; or (ii) after the Bid Deadline (as defined herein) to any Potential Bidder. The Debtor may, in the exercise of its business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the Auction; *provided, however,* that the Successful Bidder and Back-Up Bidder shall be permitted to continue to conduct due diligence until closing of the sale; *provided, further, however,* that a Qualified Bid shall not be subject to further due diligence after the Bid Deadline.

(d) Required Bid Materials: To participate in the Auction, a bidder must be a Potential Bidder and must deliver a written offer, which includes, at a minimum, the following items (the *"Required Bid Materials")* prior to the Bid Deadline:

7

i.   Documents by which the Potential Bidder offers to purchase the Assets that are the subject of the bid from the Debtor at the purchase price and upon the terms and conditions as the Potential Bidder sets forth therein.

ii.  A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, is irrevocable until entry by the Bankruptcy Court of the order approving the Proposed Sale (the ***"Sale Order")*** (unless it is chosen as the Successful Bid or Back-Up Bid (each as defined below)) and is not subject to any approvals, consents or conditions except as specified therein.

iii. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures.

iv.  Specification of the proposed purchase price and of the Assets that are the subject of the bid.

v.   Delivery by certified check or wire transfer of a good faith deposit in immediately available funds equal to 5% of the proposed purchase price (the ***"Deposit")*** for the Assets that are the subject of the bid. The Deposit shall be held in escrow and will be refunded on the terms set forth below.

vi.  Evidence or a statement indicating that the bidder has obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all initial consents required in connection with the submission and consummation of the bid have been obtained and that no other initial consents are required.

vii. Evidence of sufficient cash or other acceptable forms of currency on hand or written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact (and any other necessary) information for such financing sources.

viii. A list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor and a specification of what the bidder believes to be the appropriate cure amounts and which cure amounts will be the bidder's responsibility

8

and which will be the Debtor's responsibility. For the avoidance of doubt, this information will be included on the notice sent to all assumed contract counterparties (without discussing the name of the bidder) prior to the Auction, as set forth in more detail herein.

ix. A written disclosure of the identity of each person or entity that is bidding for the Assets or otherwise participating in connection with such bid.

x. Such other information as may be reasonably requested in writing by the Debtor at least two calendar days prior to the Bid Deadline.

(e) Qualified Bid: To be a Qualified Bid, a bid (including all Required Bid Materials) must:

i. be received by the Bid Deadline;

ii. not be subject to any due diligence or financing contingency; and

iii. not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment, provided, however, that the Debtor, in its discretion (and with the reasonable consent of the Creditors' Committee, if applicable) may decide to grant break-up fee and expense reimbursement protections to any bidder the Debtor denotes as a "Stalking Horse" bidder at any time at least five (5) days prior to the Auction, with Bankruptcy Court approval and in accordance with the Bid Procedures.

(f) A bid received from a Potential Bidder that includes all of the Required Bid Materials and meets all of the above requirements is a (***"Qualified Bid"***) if the Debtor determines that such bid evidences a *bona fide* interest and ability to purchase the Assets or any material portion thereof. A Potential Bidder that submits a Qualified Bid (a ***"Qualified Bidder"***) shall be entitled to participate in the Auction. The Debtor reserves the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.

(g) The Debtor may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid. The Debtor may also permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for a material portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of

9

bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualifying Bid.

(h)     The Qualified Bid selected by the Debtor as the highest or otherwise best bid following the Bid Deadline and prior to the start of the Auction shall be provided to all other Qualified Bidders at least 24 hours prior to the start of the Auction (the **"*Opening Bid"*)**.

(i)     As set forth in the Bid Procedures Order, at any time at least five (5) days prior to the Auction, the Debtor may enter into a purchase agreement (the **"*Stalking Horse Agreement"*)**, subject to higher and better offers at the Auction, with any bidder that submits a bid (the **"*Stalking Horse Bidder"*)** to establish a minimum Qualified Bid at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, subject to approval from the Bankruptcy Court. At least five (5) days prior to the Auction, the Debtor will distribute the Stalking Horse Agreement, if any, to the parties submitting other Qualified Bids. To the extent the Debtor enters into any such Stalking Horse Agreement, the agreement shall be placed on the Bankruptcy Court docket and notice thereof shall be given to all creditors and other parties in interest.

(j)     <u>Reservation of Rights:</u> The Debtor reserve the right to modify the Bid Procedures at or prior to the Auction if such modification will better promote the goals of the Auction, is not materially inconsistent with any prior order of the Bankruptcy Court and the Debtor deems such modifications consistent with the performance of its fiduciary obligations.

### E.     <u>The Auction</u>

19.     If, but only if, more than one Qualified Bid is received by the Debtor before the Bid Deadline, the Auction shall take place at the offices of Nelson, Mullins, Riley, & Scarborough, 150 Fourth Avenue, North, Suite 1100, Nashville, TN 37219 and shall commence thirty-five (35) days from the entry of the Bid Procedures Order, *provided, however,* that the Debtor shall have the discretion or the ability to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders; *provided, further,* that the Debtor shall have the right to conduct any number of Auctions on such date to accommodate Qualified Bids for certain, but less than all, of the Assets if the Debtor determines

that such process would be in the best interest of the Debtor's estates. The Debtor shall confirm to all Qualified Bidders the time and place of the Auction.

20.    Only a Qualified Bidder who is designated as such by the Debtor is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the Opening Bid, and subsequently continue with minimum increments of at least Ten Thousand and 0/100 ($10,000.00) Dollars.

21.    The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor as the Debtor deems necessary to better promote the goals of the Auction and to comply with its fiduciary obligations:

(a)    The Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(b)    Only representatives of the Debtor and persons or entities making Qualified Bids shall be permitted to be present at the Auction. For the avoidance of doubt, although these parties shall be permitted to be present at the Auction, only Qualified Bidders may bid at the Auction.

(c)    The terms of each Qualified Bid selected from time to time by the Debtor as being the highest or otherwise best offer at any such time (each such Qualified Bid selected at any time, the **"*Leading Bid*"** at such time) shall be fully disclosed to all other Qualified Bidders. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for any or all of the Assets at any time shall have no conditions other than those disclosed.

(d)    The Auction shall commence with the Debtor confirming the particulars of the Opening Bid and asking for higher and better offers. The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtor shall announce the Leading Bid.

(e)    The Debtor shall provide for a court reporter to be present at and prepare a transcript of the Auction. The Debtor may determine, in its discretion, to make all or any part of the transcript subject to confidentiality requirements and seal.

(f)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed sale.

11

(g)    The Debtor, acting in good faith and in the exercise of its fiduciary duties to maximize value to the Debtor's estates, may accept Qualified Bids as Leading Bids or as the Successful Bid if such Qualified Bid(s), taken together, constitute a sale of all or substantially all of the Assets without overlap.

(h)    Bidding shall commence at the amount of the Opening Bid. Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than Ten Thousand and 0/100 ($10,000.00) Dollars. The Debtor reserves the right to announce reductions or increases in minimum incremental bids (or in valuing such bids) at any time during the Auction.

(i)    All Qualified Bidders shall have the right to submit additional bids.

(j)    The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(k)    The Debtor reserves the right to (i) determine, in its reasonable discretion which bid is the highest or otherwise best, and (ii) reject at any time, without liability, any offer that the Debtor, in its reasonable discretion deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

(l)    The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets that collectively constitute substantially all of the Assets) that the Debtor determines and subject to Bankruptcy Court approval is the highest or otherwise best offer or offers that together constitute the highest or otherwise best offer or offers for the Assets from among the Qualified Bidders submitted at the Auction (the **"*Successful Bid")*.** In determining the Successful Bid, the Debtor in the exercise of the Debtor's business judgment, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered (i.e. although the Debtor will consider all forms of consideration, the Debtor prefers cash to all other types of consideration), the Qualified Bidders' ability to complete the transaction constituting the Successful Bid (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), the proposed timing thereof, the contracts being assumed by the bidder, the rights of such Qualified Bidder and the Debtor with respect to the termination thereof, and the net benefit to the Debtor's estates. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets shall become the **"*Successful Bidder(s),"*** and shall have such rights and responsibilities of a purchaser. The next highest or otherwise best bid will be the **"*Back-Up Bid"*** and the maker of the bid will be the **"*Back-Up***

***Bidder."*** Within one (1) business day after conclusion of the Auction, the Successful Bidder, the Back-Up Bidder and the Debtor shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid and the Back-Up Bid were made (subject, in the case of the Debtor, to the qualifications set forth in "Acceptance and Termination of Qualified Bids" below).

22.     The Successful Bid(s) submitted at the Auction shall constitute an irrevocable offer and be binding on the Successful Bidder and the Back-Up Bidder.  If the Successful Bid and Back-Up Bid are approved pursuant to the Sale Order, the Successful Bid shall be binding, and the Back-Up Bid shall be binding until 20 days after entry of the Sale Order. Each Qualified Bid that is not the Successful Bid or the Back-Up Bid as approved by the Bankruptcy Court at the Sale Hearing shall be deemed withdrawn and terminated at the conclusion of the Sale Hearing.

23.     The Debtor intends to sell the Assets to the Successful Bidder upon the approval of the Successful Bid and the Back-Up Bid(s) by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

24.     Each Deposit submitted pursuant to the Bid Procedures will be held in escrow and will not become property of the Debtor's estates absent further order of the Bankruptcy Court. Within two (2) Business Days following the approval by the Bankruptcy Court of the Successful Bidder and Back-Up Bidder, an escrow agent chosen by or deemed acceptable by the Debtor ("***Escrow Agent***") shall return the Deposits made by any other Qualified Bidders and the Escrow Agent shall return the Back-Up Bidder's Deposit within two business days after the Back-Up Bid is terminated in accordance with the provisions herein.

13

25.     If the Successful Bidder or the Back-Up Bidder shall fail to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder (or Back-Up Bidder, as the case may be), the Debtor shall be entitled to retain such Successful Bidder (or Back-Up Bidder, as the case may be) Deposit, in addition to other additional remedies available to the Debtor under applicable law. The Debtor shall credit the Deposit of the Successful Bidder or the Back-Up Bidder towards the purchase price at the time of funding.

**F.     Reservation of Rights to Enter Into Stalking Horse Agreement and Provide the Break-Up Fee in Connection Therewith**

26.     Pursuant to this Motion, the Debtor has determined, in its reasonable business judgment, that seeking the relief requested herein without entering into a Stalking Horse Agreement is warranted and necessary. The Debtor is, however, continuing its discussions with potential purchasers, and reserves the right to enter into a Stalking Horse Agreement if the Debtor believes that such an agreement will further the purposes of the Auction, by among other things, enticing value maximizing bids.

27.     If the Debtor determines in its reasonable business judgment to enter into a Stalking Horse Agreement containing customary terms and conditions, the Debtor will seek Bankruptcy Court approval of such an Agreement on an expedited basis prior to the Auction.

**ASSUMPTION PROCEDURES**

28.     Within two (2) business days after receiving the schedule from each Qualified Bidder of those executory contracts and unexpired leases it wishes to assume (the ***"Designated Contracts"***) and no later than nine (9) days before the Sale Hearing (subject to adjustment as provided below), the Debtor shall file with the Court and serve on each counterparty to an executory contract or unexpired lease set forth on such schedule a notice of assumption, assignment, and cure (the ***"Cure Notice"***). The Cure Notice shall include the proposed

14

purchasers' calculation of the cure amount (the **"Cure Amount')** for each such Designated Contract. A list of the Designated Contracts and Cure Amounts shall be posted on the Website by two (2) days after the Bid Deadline and updated as modified by each bidder.

29.     Any counterparty to a Designated Contract shall file and serve any objections to (i) the proposed assumption and assignment set forth in the Cure Notice and (ii) if applicable, the proposed Cure Amount, no later than two (2) days before the Sale Hearing. If any executory contract or unexpired lease is added to the schedule of Designated Contracts, a copy of the applicable Cure Notice shall be served on the counterparty by overnight courier service within one (1) business day of such addition (and in no event less than one (1) business day before the Sale Hearing) and any counterparty may file an objection as aforesaid at any time that is two hours prior to the Sale Hearing.

30.     At the Sale Hearing, only those contracts (and the corresponding Cure Amounts) listed on the Cure Notice that have been selected to be assumed by the Successful Bidder at the Auction (the **"Selected Contracts")** shall be subject to approval by the Bankruptcy Court, and the Debtor shall reserve its right for all other contracts. If no objection to the Cure Notice with respect to the Selected Contracts is timely received, (i) the counterparty to a Selected Contract shall be deemed to have consented to the assumption and assignment of the Selected Contract to the Successful Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (ii) the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Selected Contract, or any other document, and the counterparty to a Selected Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Contract against the Debtor or the Successful Bidder, or the property of any of them.

15

## THE SALE IS WARRANTED AND IN THE BEST INTERESTS
## OF THE DEBTOR AND ITS ECONOMIC STAKEHOLDERS

**A.**     **Sale of the Assets**

31.     Ample authority exists for approval of the proposed sale. Bankruptcy Code section 363 provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts, in applying this section, have required that the sale of a debtor's assets be based upon the sound business judgment of the debtor. *See, e.g., Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.),* 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983) (same). Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *In re Betty Owens Sch., Inc.,* No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997); *In re Del. and Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991); *In re Decora Indus., Inc.,* No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002).

32.     It is the Debtor's business judgment that a Sale Transaction provides the Debtor with the best alternative to maximize the value of its estates. By proceeding with the Sale Transaction, the Debtor will encourage competitive bidding to obtain the best recovery for their creditors on assets in which the market has demonstrated significant interest while still maintaining sufficient flexibility for other parties to propose alternative plan structures that yield more value for the Debtor's stakeholders. The Debtor believes that the Sale Transaction presents

16

the best path to unlock the value of its Assets. Through the Auction process, at the Sale Hearing, and after the Auction is concluded, the Court will be assured that the Debtor has selected the party or parties with the highest or otherwise best offer for the Assets.

33.     The proposed Sale Notice and the proposed Bid Procedures are appropriate, reasonable and designed to ensure the most robust bidding and auction process possible for the Assets.  As stated, the Sale Notice will be promptly served on the Sale Notice Parties and will be timely published in the *USA Today*. In addition, before the Bid Deadline, the Debtor will continue to contact various parties who have previously expressed an interest in acquiring assets of the Debtor to determine whether such parties are interested in submitting a bid. The Debtor believes that this process provides sufficient notice and a reasonable period in which to attract bids.

### B.     Sale Free and Clear of Liens, Claims, Encumbrances, and Interests

34.     Pursuant to Bankruptcy Code section 363(f), a debtor in possession may sell property of the estate:

> free and clear of any interest in such property of an entity other than the estate if (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest, (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35.     The Debtor believes that one or more of the tests of Bankruptcy Code section 363(f) are satisfied with respect to the transfer of the Assets.  In particular, the Debtor believes that it meets, among others, the test set forth in section 363(f)(5). Any parties in interest that assert liens, claims, encumbrances or other interests in, to or against the Acquired Assets will be

adequately protected by having their liens, if any, attach to the proceeds of the Sale Transaction, in the same order of priority, with the same validity, force and effect that such parties had prior to the Sale Transaction, subject to any claims and defenses that the Debtor and its estates may possess with respect thereto. Accordingly, section 363(f) authorizes the transfer and conveyance of the Assets free and clear of all liens, claims, encumbrances and all other interests.

36.     The Debtor also submits that it is appropriate to sell the Assets free and clear of successor liability relating to the Debtor's businesses. Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtor.   Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business. *See, e.g., MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 89, 93-94 (2d Cir. 1988) (holding that channeling of claims to proceeds is consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re Chrysler LLC,* 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[S]uccessor or transferee liability claims against [the purchaser] are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction."), *aff 'd,* 2009 U.S. App. LEXIS 17441 (2d Cir. Aug. 5, 2009). The purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances and all other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtor would run the risk that potential bidders may not enter the Auction or, if they did, would do so with reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtor's businesses, but should hold the purchased Assets free and clear.

C.    **Protections As a Good Faith Purchaser**

37.    Bankruptcy Code section 363(m) protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Bankruptcy Code section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] ... does not affect the validity of a sale ... to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "affords 'finality to judgment by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids." *Reloeb Co. v. LTV Corp (In re Chateaugay Corp.),* No. 92 Civ. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993) (quoting *In re Stadium Mgmt. Corp.,* 895 F.2d 845, 847 (1st Cir. 1990)); *see also Allstate Ins. Co. v. Hughes,* 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.,* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

38.    Here, the Successful Bidder will have engaged in the Auction pursuant to the proposed Bid Procedures, and any agreement reached with a Successful Bidder will be the product of arm's-length, good-faith negotiations in a competitive bidding process. Moreover, by subjecting the Assets to a market test through the Auction, the Debtor submits that the consideration to be received will be fair and reasonable. Based upon the record to be made at the

19

Sale Hearing, the Debtor will request a finding that the Successful Bidder is a good-faith purchaser entitled to the protections of Bankruptcy Code section 363(m).

### D. <u>Bid Procedures</u>

39.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656-57 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential 'business judgment" standard, under which such procedures and arrangements are 13resumptively valid'); *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).

40.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Integrated Res.,* 147 B.R. at 659 (It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.),* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); *see also Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand'). To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Integrated Res.,*

147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets").

41.     The Debtor believes that the currently proposed Bid Procedures will establish parameters pursuant to which the value of the Assets may be fully tested at the Auction and ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtor receives the greatest possible consideration for the Assets because they will ensure a competitive and fair bidding process that will encourage participation by financially capable bidders who demonstrate the ability to close such a transaction. Indeed, the Debtor has put limited (if any) constraints on the ability of prospective purchasers to bid on the Debtor's assets, and instead have encouraged bid flexibility by, among other features, allowing bidders to pool bids and bid with non-cash consideration. Further, the Debtor has instituted mechanisms to ensure an open and robust bidding process at the Auction. Therefore, the Debtor believes that the Bid Procedures (i) will encourage bidding for the Assets, (ii) are consistent with other procedures previously approved by other courts and (iii) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See, e.g., Integrated Res.,* 147 B.R. at 659; *995 Fifth Ave. Assocs.,* 96 B.R. at 28.

42.     Thus, the proposed Bid Procedures are reasonable, appropriate and within the Debtor's sound business judgment under the circumstances because they will serve to maximize the value the Debtor will recover on account of a sale of the Assets.

### E.     Ability to Enter into Stalking Horse Agreement with Break-Up Fee

43.     Pursuant to this Motion, the Debtor is reserving the right to seek the Bankruptcy Court's approval to allow the Debtor to choose a Stalking Horse Bidder at any time after entry of the Bid Procedures Order and to offer that bidder the Bidding Protections and other customary

terms and conditions to be approved by the Court ("***Stalking Horse Terms***"). The ability of the Debtor to offer any Stalking Horse Bidder the Bidding Protections and Stalking Horse Terms is beneficial to the Debtor's estate and creditors in that the Debtor can provide the incentive required to induce a Potential Bidder to submit or increase its bid prior to the Auction. To the extent bids can be improved prior to the Auction, a higher floor is established for further bidding. Thus, even if a Stalking Horse Bidder is offered the Bidding Protections and Stalking Horse Terms and ultimately is not the Successful Bidder, the Debtor and its estate will have benefited from the higher floor established by the improved bids. The Debtor will exercise prudent business judgment before offering or agreeing to any of the Bidding Protections and Stalking Horse Terms and will only do so if such protections, in the reasonable business judgment of the Debtor will likely result in the realization of greater value for the Debtor and its estate.

44.     Approval of Stalking Horse Terms provided in connection with the sale of significant assets pursuant to Bankruptcy Code section 363 is appropriate to protect a potential purchaser from competing purchasers that use a stalking horse offer as a baseline to submit a better offer without undertaking customary diligence. *In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) (approving bid protections because, among other factors, 'the stalking horse bid brings value to the estate by setting a floor on the price and providing a structure for potential competing bids . . . [and] would provide comfort to the Debtors' employees and customers that the company was entering the auction with a locked-in bid."); *In re Marrose Corp.,* Nos. 89 B. 12171 to 89 B. 12179, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (bidding incentives are "meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

45. Bankruptcy courts have approved such protections under the business judgment rule, which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., Integrated Res., Inc.,* 147 B.R. at 656-62 (approving break-up fee expense reimbursement and noting that break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential 'business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *Fifth Ave. Assocs., L.P.,* 96 B.R. at 28 (respecting the debtors' business judgment that bidding incentives were "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking").

46. The Debtor submits that, to the extent it determines that it is in the best interests of its estates to enter into a Stalking Horse Agreement, the Bidding Protections and Stalking Horse Terms meet the business judgment standard, and will seek Bankruptcy Court approval of same.

47. The Debtor submits that the proposed Bidding Protections and Stalking Horse Terms will not chill bidding — instead, they will only be offered if the Debtor receives a bid that is worthy of such protections. Moreover, the Bidding Protections and Stalking Horse Terms are reasonable, and their availability to the Debtor will enable the Debtor to maximize the value of its estates. Accordingly, the Debtor should be authorized to offer such forms of bid protection with the Court's approval, as is necessary in the Debtor's business judgment.

## F. Assumption and Assignment of Designated Contracts

48. To facilitate and affect the sale of the Assets, the Debtor seeks authorization to assume and assign the Selected Contracts to the Successful Bidder. Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may assume or

23

reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor's decision to assume an executory contract or unexpired lease must be an exercise of its sound business judgment for the Court to approve the assumption under Bankruptcy Code section 365 (a). *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),* 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1099 (2d Cir. 1993). In connection with the proposed sale, the Debtor will assume and assign only the Selected Contracts *(i.e.* those executory contracts and unexpired leases that the Successful Bidder has indicated it wants to assume).

49.     Further, Bankruptcy Code section 365(k) provides that assignment by the debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Therefore, upon the closing of the Sale Transaction (or the effective date of a plan, whichever is earlier), the Debtor will be relieved of its obligations under the Selected Contracts, thereby further decreasing the obligations of the estate and creating value for creditors.

50.     The Debtor's assumption of the Selected Contracts will be contingent upon payment of the Cure Amounts. Bankruptcy Code section 365(b)(1) requires that any outstanding defaults under contracts that will be assumed must be cured or that adequate assurance be provided to the contract counterparties that such defaults will be promptly cured. As set forth in the Assumption Procedures above, the Debtor proposes to file with the Court, publish on the Website, and serve on each counterparty to a Designated Contract a notice[3] that shall include the Debtor's calculation of the Cure Amount for each such Designated Contract. Contract

---

[3] To be clear, the notice will include the Cure Amounts for each contract that any Qualified Bidder seeks to assume. If a contract was included in the notice but is not part of the Successful Bidder's list of Selected Contracts (which will be noticed at least 48 hours prior to the Sale Hearing), the Debtor will not seek to assume such contracts at the Sale Hearing

Case 3:17-bk-01300    Doc 55    Filed 03/16/17    Entered 03/16/17 17:25:55    Desc Main
Document    Page 26 of 47

counterparties shall have the opportunity to object to the proposed assumption and assignment to the Successful Bidder and, if applicable, the proposed Cure Amount, and any such objections will be heard and determined at the Sale Hearing. The Successful Bidder shall be obligated to pay or cause to be paid any and all Cure Amounts with respect to the Selected Contracts to be assumed. In the event of any dispute relating to any Cure Amount, the Successful Bidder may elect not to assume the Selected Contract if it is unsatisfied with the resolution of such dispute.

51.     Pursuant to Bankruptcy Code section 365(f)(2), a debtor may assign an executory contract or unexpired lease of nonresidential real property if 'adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of Adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr D.N.J. 1988) (internal citations omitted); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (holding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) (`Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance when prospective assignee of lease had financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

52.     At the Sale Hearing, to the extent necessary, the Debtor will be prepared to proffer testimony or present evidence to demonstrate the ability of the Successful Bidder to perform under the Selected Contracts. The Sale Hearing, therefore, will provide the Court and other interested parties with the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Selected Contracts, as required by Bankruptcy Code section 365(b)(1)(C). Accordingly, it is requested that, at the conclusion of the Sale Hearing, the proposed assumption and assignment of the Selected Contracts be approved.

53.     To facilitate the assumption and assignment of the Selected Contracts, the Debtor further requests the Court find all anti-assignment provisions of the Selected Contracts to be unenforceable under section 365(f) of the Bankruptcy Code.[4]  Absent such a finding, the Debtor's ability to attract the highest or otherwise best offer to maximize value for the estates may be imperiled.

### G.     Notice of the Auction and Sale Hearing

54.     The Debtor submits that the Sale Notice as set forth above, along with publication of the Sale Notice in *USA Today* and on the Website, is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Assets, and/or object to the proposed sale of the Debtor's Assets. Such notice is intended, through the use of electronic mail, fax, overnight mail, first class mail and publication, to effect service as quickly as possible in the context of the expedited schedule proposed herein. All parties, including all

---

[4] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease...." 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

potential bidders at the Auction and other parties in interest will thus receive prompt notice. Accordingly, the Debtor submits that the foregoing method of notice is reasonable under the circumstances.

**H.** **Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)**

55.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

56.     The Debtor believes that the sale of the Assets should be consummated as soon as practicable in order to preserve and maximize value. Accordingly, the Debtor requests that the Sale Order approving the sale of the Assets and the assumption and assignment of the Designated Contracts be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## NOTICE

57.     The Debtor has provided notice of the motion to the Office of the United States Trustee for Middle District of Tennessee and all creditors and parties in interest. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

27

Dated:  March 16, 2017.                     Respectfully submitted,

                                            NELSON, MULLINS, RILEY &
                                            SCARBOROUGH LLP

                                            By:     */s/ Shane G. Ramsey*_____
                                                    Shane G. Ramsey (BPR # 35528)
                                                    Jason I. Epstein (BPR # 017970)
                                                    John T. Baxter (BPR # 35405)
                                                    150 Fourth Avenue, North, Suite 1100
                                                    Nashville, TN  37219
                                                    Phone:  (615) 664-5355
                                                    E-Mail:  shane.ramsey@nelsonmullins.com
                                                    jason.epstein@nelsonmullins.com
                                                    john.baxter@nelsonmullins.com
                                                    *Attorneys for Debtor-in-Possession*

**<u>CERTIFICATE OF SERVICE</u>**

On March 16, 2017, the foregoing was served via CM/ECF on all parties consenting to electronic service in this case. The Debtor shall serve the same by the next business day by regular mail, email, and/or fax (as applicable) to (i) the Debtor's twenty largest unsecured creditors, and (ii) the Office of the United States Trustee.

/s/ Shane G. Ramsey
Shane G. Ramsey

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:17-bk-01300 |
| DART MUSIC, INC., | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

**[PROPOSED] ORDER, PURSUANT TO 11 U.S.C. §§ 105, 363, 364, 365, 503 AND 507**
**AND FED. R. BANKR. P. 2002, 4001, 6004, 6006, 9008, AND 9014, APPROVING**
**(A) BID PROCEDURES, (B) NOTICE OF SALE, AUCTION, AND SALE HEARING,**
**AND (C) ASSUMPTION PROCEDURES AND RELATED NOTICES**

Upon the motion (the "***Motion***")[1] of Dart Music, Inc. ( the "***Debtor***"), as debtor-in-possession*,* pursuant to 11 U.S.C. §§ 105, 363, 364, 365, 503 and 507 and Fed. R. Bankr. P. 2002, 4001, 6004, 6006, 9008, and 9014, for entry of (I) an order approving (A) bid procedures in connection with the sale of substantially of all of the Debtor's assets (the "***Assets***"), (B) the notice of sale, auction, and sale hearing (the "***Sale Notice***") and (C) assumption procedures and related notices (as hereinafter defined); and (II) an order approving the sale of the Assets (the "***Sale Transaction***"); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and upon the Court's consideration of the Motion, the record of the hearing held on_____, 2017 with respect to the Motion (the "***Bid Procedures Hearing***")*,* including any objections filed and raised at the Hearing; and upon all of the proceedings had before the Court; and any objections to the Motion

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

1

having been withdrawn, resolved, or overruled on the merits; and the Court having determined that there exists just cause for the relief granted herein and that such relief is in the best interests of the Debtor, its estate and creditors and all other parties in interest; it is **HEREBY ORDERED** that:

1.      The Motion is **GRANTED** to the extent provided herein.

## Bid Procedures

2.      The Bid Procedures, substantially in the form annexed hereto as <u>Exhibit A</u> and incorporated herein by reference, are hereby approved. The failure specifically to include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision.

## Bid Deadline, Auction and Sale Hearing

3.      The deadline for a Potential Bidder to submit bids shall be  , _____, 2017 at 5:00 p.m. (prevailing Central Time) (the "***Bid Deadline***")**.** The Auction shall be held on _____, 2017 at the offices of Nelson Mullins Riley & Scarborough, LLP, 150 Fourth Ave. North, Suite 1100, Nashville, Tennessee 37219 at 9:00 a.m. (prevailing Central Time).

4.      The Court shall hold a hearing on _____, 2017 at 9:00 a.m. (prevailing Central Time) (the "***Sale Hearing***") in the United States Bankruptcy Court for the Middle District of Tennessee, Customs House, 701 Broadway, Nashville, Tennessee 37203, at which time the Court shall consider the approval of the Sale Transaction as set forth in the Motion, approve the Successful Bidder(s), and confirm the results of the Auction, if any.  Objections to the Sale Transaction" shall be in writing, filed and served so as to be actually received by the Bankruptcy Court and the following parties (the "***Objection Recipients***") on or before  , _____2017 at 5:00 p.m. (prevailing Central Time) (the "***Objection Deadline***"):

2

5.     The failure to file and serve an objection to the Sale Transaction by the Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or thereafter.

6.     At least five days prior to the auction and following the submission of the Qualified Bids, the Debtor, with further approval by this Court, may enter into a Purchase Agreement (the "*Stalking Horse Agreement*"), subject to higher and better offers at the Auction, with any Qualified Bidder that submits a Qualified Bid (the "*Stalking Horse Bidder*") to establish a minimum Qualified Bid (the "*Stalking Horse Bid*") at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in an amount to be determined by the Debtor (such break-up fee or expense reimbursement, the "*Break-Up Fee*" and "*Expense Reimbursement,*" respectively). At least five days prior to the Auction, the Debtor will distribute the Stalking Horse Agreement, if any, to the parties submitting the other Qualified Bids.

7.     Should the Debtor enter into a Stalking Horse Agreement, the Debtor is authorized to pay a Break-Up Fee and Expense Reimbursement as provided in the Stalking Horse Agreement without further order of the Court.

8.     The Debtor's obligation, if any, to pay a Break-Up Fee and Expense Reimbursement as provided herein shall survive termination of the Stalking Horse Bid, and shall constitute a superpriority administrative claim against the Debtor's estate pursuant to Bankruptcy Code sections 105(a), 503(b) and 364(c)(1).

9.     The Sale Hearing may be adjourned from time to time without further notice to the Sale Notice Parties (as defined below), creditors or other parties in interest other than by announcement of the adjournment in open court or an entry of a notice of such adjournment on the Court's docket.

3

## Authorization

10.     The Debtor is authorized to take such actions as contemplated by the Motion prior to the Auction and the Sale Hearing, including, without limitation, actions to notify creditors, customers, regulators or other interested parties regarding the Sale Transaction and to obtain any necessary consents or approvals regarding the Sale Transaction or any other actions necessary to effectuate the Sale Transaction.

## Notice

11.     Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Sale Hearing and (e) the proposed assumption and assignment of the Designated Contracts or other similarly designated contracts to the Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

Notice of Sale, Auction and Sale Hearing

12.     Within five (5) business days after entry of this Order, the Debtor (or its agents) shall:

   a.     Provide (i) notice of the Sale Transaction, the Auction, and the Sale Hearing, and (ii) this Order by email, mail, facsimile or overnight delivery service, upon: (a) the Office of the United States Trustee for the Middle District of Tennessee; (b) all known creditors and parties in interest of the Debtor; and (c) all known entities that have previously expressed, or who the Debtor believes may express, a bona fide interest in purchasing the Assets (collectively the ***"Sale Notice Parties")***;

   b.     Publish the Sale Notice on one occasion each in *USA Today*,

   c.     Cause the Sale Notice to be published on www.dartdata.io (the ***"Website").***

Assumption, Assignment and Cure Notice

   a.     Within two (2) business days after receiving the schedule from each Qualified Bidder of those executory contracts and unexpired leases it wishes to assume (the ***"Designated Contracts"***) and no later than nine (9) days prior to the Sale Hearing, the Debtor shall file with the Court and

4

serve on each counterparty to a Designated Contract by email, mail, facsimile or overnight delivery service, a notice of assumption, assignment and cure (the *"Cure Notice"*). The Cure Notice shall include the Qualified Bidder's calculation of the amount necessary to cure all monetary defaults (the *"Cure Amount"*) for each such Designated Contract. A list of the Designated Contracts, including Cure Amounts with respect thereto, will be posted on the Website and updated as modified. The Debtor reserves the right to provide the Cure Notice to counterparties not yet so designated by each Qualified Bidder, and each Qualified Bidder shall have the right to supplement its designation of contracts for assumption and assignment up until one day prior to the Sale Hearing, and to remove a contract from the list of Designated Contracts at any time prior to conclusion of the Auction.

b.    Any counterparty to a Designated Contract shall file and serve on the Objection Recipients any objections to (i) the proposed assumption and assignment to the Successful Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (ii) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), no later than 5:00 p.m. (prevailing Central Time) two (2) business days before the Sale Hearing. If any executory contract or unexpired lease is added to the schedule of Designated Contracts, a copy of the applicable Cure Notice shall be served on the counterparty by overnight courier service within one (1) day of such addition (and in no event less than one (1) business day before the Sale Hearing), and any counterparty may file an objection as aforesaid at any time that is two hours prior to the Sale Hearing.

c.    At the Sale Hearing, only those contracts (and the corresponding Cure Amounts) listed on the Cure Notice that have been selected to be assumed by the Successful Bidder at the Auction (the *"Selected Contracts"*) shall be subject to approval by the Bankruptcy Court, and the Debtor shall reserve its rights for all other contracts. If no objection to the Cure Notice with respect to the Selected Contracts is timely received, (x) the counterparty to a Selected Contract shall be deemed to have consented to the assumption and assignment of the Selected Contract to the Successful Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (y) the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Selected Contract, or any other document, and the counterparty to a Selected Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Contract against the Debtor or the Successful Bidder, or the property of any of them.

5

13.    This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation, implementation and enforcement of this Order.

IT IS SO ORDERED.

APPROVED FOR ENTRY:

*/s/ Shane G. Ramsey*
Shane G. Ramsey (BPR # 35528)
Jason I. Epstein (BPR # 017970)
John T. Baxter (BPR # 35405)
150 Fourth Avenue, North, Suite 1100
Nashville, TN  37219
Phone:  (615) 664-5355
E-Mail:  shane.ramsey@nelsonmullins.com
jason.epstein@nelsonmullins.com
john.baxter@nelsonmullins.com
*Attorneys for Debtor-in-Possession*

# EXHIBIT A

# DART MUSIC, INC.

## BID PROCEDURES

### Introduction

Dart Music, Inc. (the "**Debtor**") is debtor-in-possession in a chapter 11 case (Case No. 3:17-bk-01300) pending in the United States Bankruptcy Court for the Middle District of Tennessee (the "**Bankruptcy Court**").

On _____, 2017 the Bankruptcy Court entered its order (the "**Bid Procedures Order**"), (i) authorizing the Debtor, among other things, to market substantially all of the assets of the Debtor (the "**Assets**") through the bid procedures described herein (the "**Bid Procedures**"), and (ii) scheduling a hearing (the "**Sale Hearing**") to consider approval of the sale of substantially all of the assets of the Debtor to the Successful Bidder (as defined below), to be conducted on _____, 2017 at 9:00 A.M., Central time, in Courtroom 1, United States  Bankruptcy Court for the Middle District of Tennessee, Customs House, 701 Broadway, Nashville, TN, 37203.

### Key Dates For Potential Bidders

These Bid Procedures provide interested parties with the opportunity to qualify and participate in the auction of the Assets (the "**Auction**") and submit competing bids for the Assets. The Debtor shall assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and shall accept bids (as defined below) until 5:00 p.m., Central time on _____, 2017.[1]

The key dates for the sale process are as follows:

| | |
|---|---|
| _____, 2017 at 5:00 P.M. CDT | Bid Deadline - Due Date for Bids and Deposits |
| _____, 2017 at 9:00 A.M. CDT[2] | Auction |
| _____, 2017 at 9:00 A.M. CDT[3] | Sale Hearing |

---

[1] Bid Deadline is to be 30 days from date of entry of the Bid Procedures Order.

[2] Auction date is to be 35 days from date of entry of the Bid Procedures Order.

[3] Subject to Bankruptcy Court availability, the Sale Hearing date is to be two (2) business days after the Auction.

1

## Bid Procedures

Set forth below are the Bid Procedures to be employed with respect to the proposed sale of the Assets (the "**Proposed Sale**"). The Bid Procedures Order authorizes and approves the Proposed Sale to such Qualified Bidder(s) (as defined below) as is determined to have made the highest or otherwise best offer for some or all of the Assets. Any person or entity who wishes to participate in the Bidding Process (as defined below) and the Proposed Sale must meet the participation requirements to become a Potential Bidder as specified below and must thereafter timely submit a Qualified Bid (as defined below) to become a Qualified Bidder. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or their legal counsel and financial advisors) and the Debtor and its representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

The Debtor and its representatives shall (i) receive and evaluate all offers made hereunder, (ii) determine whether any person or entity has met the participation requirements to become a Potential Bidder and has timely submitted a Qualified Bid so as to become a Qualified Bidder, (iii) coordinate the efforts of Potential Bidders in conducting any required due diligence investigations and (iv) negotiate in good faith with respect to any Qualified Bids (collectively, the "**Bidding Process**").

## Participation Requirements

Any person or entity that wishes to conduct due diligence with respect to the Assets must first deliver to the Debtor an executed confidentiality agreement (it being understood that any person or entity who previously signed a confidentiality agreement in a form satisfactory to the Debtor shall not be required to execute a new confidentiality agreement). The executed confidentiality agreement must be signed and transmitted by the person or entity wishing to become a Potential Bidder so as to be received by each of the following parties (the "**Notice Parties**") prior to any dissemination of confidential information: Nelson Mullins Riley & Scarborough LLP, 150 Fourth Avenue North, Suite 1100, Nashville, TN 37219 (Attn: Shane G. Ramsey, Esq.; shane.ramsey@nelsonmullins.com and Jason I. Epstein, Esq.; jason.epstein@nelsonmullins.com), counsel to the Debtor.

A "**Potential Bidder**" is a person or entity that the Debtor determines is reasonably likely (based on relevant considerations as determined in good faith by the Debtor) to: (a) submit a *bona fide* offer; and (b) be able to consummate the Proposed Sale if selected as a Successful Bidder or Back-Up Bidder (as defined below).

## Due Diligence

The Debtor may afford each Potential Bidder the time and opportunity to conduct reasonable due diligence; provided, however, that neither the Debtor nor any of its representatives shall be obligated to furnish any due diligence information: (i) at any time to any person or entity other than a Potential Bidder; or (ii) after the Bid Deadline (as hereinafter defined) to any Potential Bidder. The Debtor may, in the exercise of its business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline until the

2

Auction; *provided, however,* that the Successful Bidder and Back-Up Bidder shall be permitted to continue to conduct due diligence until closing of the sale (subject to the terms of the Purchase Agreement); *provided, further, however,* that a Qualified Bid shall not be subject to further due diligence after the Bid Deadline.

## Bid Deadline

The deadline for a Potential Bidder to submit bids shall be _____, **2017 at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**").[4] Any Potential Bidder who fails to submit a bid so as to be received by the Notice Parties in advance of the Bid Deadline shall not be permitted to participate in the Bidding Process and will not be a Qualified Bidder.

Prior to the Bid Deadline, a Potential Bidder that desires to make a bid shall deliver written copies of its bid in writing and executed by an individual or individuals authorized to bind the Potential Bidder. Each bid shall be served by courier, facsimile, e-mail or as otherwise specified by the Debtor to each of the Notice Parties.

## Bid Requirements

To participate in the Auction, a bidder must be a Potential Bidder and must deliver a written offer, which includes, at a minimum, the following items (the "**Required Bid Materials**") prior to the Bid Deadline:

i. Documents by which the Potential Bidder offers to purchase the Assets that are the subject of the bid from the Debtor at the purchase price and upon the terms and conditions as the Potential Bidder sets forth therein.

ii. A written acknowledgment that the bid is not subject to any due diligence or financing contingency, is not conditioned on the payment in any circumstances of a break-up fee, expense reimbursement or similar type of payment to the bidder, is irrevocable until entry by the Bankruptcy Court of the order approving the Proposed Sale (the "**Sale Order**") (unless it is chosen as the Successful Bid or Back-Up Bid (each as defined below)) and is not subject to any approvals, consents or conditions except as specified therein.

iii. A written acknowledgement by the bidder that it agrees to all of the terms for sale set forth in these Bid Procedures.

iv. Specification of the proposed purchase price and of the Assets that are the subject of the bid.

v. Delivery by certified check or wire transfer of a good faith deposit in immediately available funds equal to 5% of the proposed purchase price (the

---

[4] Bid Deadline to be 30 days from date of entry of the Bid Procedures Order.

3

"**Deposit**") for the Assets that are the subject of the bid. The Deposit shall be held in escrow and will be refunded on the terms set forth below.

vi.     Evidence or a statement indicating that the bidder has obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission and consummation of its bid and acceptance of the terms of sale in these Bid Procedures, or a representation that no such authorization or approval is required and that any and all initial consents required in connection with the submission and consummation of the bid have been obtained and that no other initial consents are required.

vii.    Evidence of sufficient cash or other acceptable forms of currency on hand or written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact (and any other necessary) information for such financing sources.

viii.   A list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor and a specification of what the bidder believes to be the appropriate cure amounts and which cure amounts will be the bidder's responsibility and which will be the Debtor's responsibility. For the avoidance of doubt, this information will be included on the notice sent to all assumed contract counterparties (without discussing the name of the bidder) prior to the Auction, as set forth in more detail herein.

ix.     A written disclosure of the identity of each person or entity that is bidding for the Assets or otherwise participating in connection with such bid.

x.      Such other information as may be reasonably requested in writing by the Debtor at least two calendar days prior to the Bid Deadline.

In order to be a Qualified Bid, a bid (including all Required Bid Materials) must:

i.      be received by the Bid Deadline;

ii.     not be subject to any due diligence or financing contingency; and

iii.    not request or entitle the bidder to any break-up fee, expense reimbursement or similar type of payment, provided, however, that the Debtor, in its discretion may decide to grant break-up fee and expense reimbursement protections to any bidder the Debtor denotes as a "Stalking Horse" bidder at any time at least five (5) days prior to the Auction, with Bankruptcy Court approval and in accordance with the Bid Procedures Order.

A bid received from a Potential Bidder that includes all of the Required Bid Materials and meets all of the above requirements is a "**Qualified Bid**" if the Debtor determines that such bid evidences a *bona fide* interest and ability to purchase the Assets or any material

4

portion thereof. A Potential Bidder that submits a Qualified Bid (a "**Qualified Bidder**") shall be entitled to participate in the Auction. The Debtor reserves the right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.

The Debtor may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid. The Debtor may also permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for a material portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualifying Bid.

The Qualified Bid selected by the Debtor as the highest or otherwise best bid following the Bid Deadline and prior to the start of the Auction shall be provided to all other Qualified Bidders at least 24 hours prior to the start of the Auction (the "**Opening Bid**").

As set forth in the Bid Procedures Order, at any time at least five (5) days prior to the Auction, the Debtor may enter into a purchase agreement (the "**Stalking Horse Agreement**"), subject to higher and better offers at the Auction, with any bidder that submits a bid (the "**Stalking Horse Bidder**") to establish a minimum Qualified Bid at the Auction. The Stalking Horse Agreement may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in an amount to be determined by the Debtor. At least five (5) days prior to the Auction, the Debtor will distribute the Stalking Horse Agreement, if any, to the parties submitting other Qualified Bids. To the extent the Debtor enters into any such Stalking Horse Agreement, the agreement shall be placed on the Bankruptcy Court docket and notice thereof shall be given to all creditors and other parties in interest.

## Conduct Of The Auction, If Any

If but only if more than one Qualified Bid is received by the Debtor prior to the Bid Deadline, the Auction shall take place at the offices of Nelson Mullins Riley & Scarborough LLP, 150 Fourth Avenue North Suite 1100, Nashville, TN 37219 and shall commence on _____, 2017 **at 9:00 a.m. (prevailing Central time)**[5]; *provided, however,* that the Debtor shall have the discretion or the ability to adjourn or cancel the Auction at any time by delivering notice of such adjournment or cancellation to all Qualified Bidders; *provided, further,* that the Debtor shall have the right to conduct any number of Auctions on such date to accommodate Qualified Bids for certain, but less than all, of the Assets if the Debtor determines that such process would be in the best interest of the Debtor's estate. The Debtor shall confirm to all Qualified Bidders the time and place of the Auction.

---

[5] Auction date to be 35 days from date of entry of the Bid Procedures Order.

Case 3:17-bk-01300   Doc 55   Filed 03/16/17   Entered 03/16/17 17:25:55   Desc Main
Document     Page 43 of 47

Only a Qualified Bidder who is designated as such by the Debtor is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the Opening Bid, and subsequently continue with minimum increments of at least Ten Thousand and 0/100 ($10,000,000.00) Dollars.

The Auction shall be governed by the following procedures, which procedures shall be subject to modification by the Debtor as the Debtor deems necessary to better promote the goals of the Auction and to comply with their fiduciary obligations:

a) The Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

b) Only representatives of the Debtor and persons or entities making Qualified Bids shall be permitted to be present at the Auction. For the avoidance of doubt, although these parties shall be permitted to be present at the Auction, only Qualified Bidders may bid at the Auction

c) The terms of each Qualified Bid selected from time to time by the Debtor as being the highest or otherwise best offer at any such time (each such Qualified Bid selected at any time, the "**Leading Bid**" at such time) shall be fully disclosed to all other Qualified Bidders. For the avoidance of doubt, each Leading Bid and each bid identified as being the highest or otherwise best offer for any or all of the Assets at any time shall have no conditions other than those disclosed

d) The Auction shall commence with the Debtor confirming the particulars of the Opening Bid and asking for higher and better offers. The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtor shall announce the Leading Bid.

e) The Debtor shall provide for a court reporter to be present at and prepare a transcript of the Auction. The Debtor may determine, in its discretion, to make all or any part of the transcript subject to confidentiality requirements and seal.

f) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Proposed Sale.

g) The Debtor, acting in good faith and in the exercise of its fiduciary duties to maximize value to the Debtor's estate, may accept Qualified Bids as Leading Bids or as the Successful Bid if such Qualified Bid(s), taken together, constitute a sale of all or substantially all of the Assets without overlap.

h) Bidding shall commence at the amount of the Opening Bid. Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than Ten Thousand and 0/100 ($10,000,000.00) Dollars. The Debtor reserves the right to announce reductions or increases in minimum incremental bids (or in valuing such bids) at any time during the Auction.

6

i) All Qualified Bidders shall have the right to submit additional bids.

j) The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

k) The Debtor reserves the right to (i) determine, in their reasonable discretion which bid is the highest or otherwise best, and (ii) reject at any time, without liability, any offer that the Debtor, in its reasonable discretion deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

l) The Auction shall continue until there is only one bid (or more than one bid for non-overlapping portions of the Assets that collectively constitute substantially all of the Assets) that the Debtor determines, and subject to Bankruptcy Court approval, is the highest or otherwise best offer or offers that together constitute the highest or otherwise best offer or offers for the Assets from among the Qualified Bidders submitted at the Auction (the "**Successful Bid**"). In determining the Successful Bid, the Debtor in the exercise of the Debtor's business judgment, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered (i.e. although the Debtor will consider all forms of consideration, the Debtor prefers cash to all other types of consideration), the Qualified Bidders' ability to complete the transaction constituting the Successful Bid (including without limitation, the ability to obtain any required regulatory approvals or consents or the lack thereof), the proposed timing thereof, the contracts being assumed by the bidder, the rights of such Qualified Bidder and the Debtor with respect to the termination thereof, the number, type and nature of any changes reflected in the purchase agreement requested by each Qualified Bidder, and the net benefit to the Debtor's estate. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets shall become the "**Successful Bidder(s)**," and shall have such rights and responsibilities of a purchaser, as set forth in the Purchase Agreement, or modified definitive purchase agreement, as applicable. The next highest or otherwise best bid will be the "**Back-Up Bid**" and the maker of the bid will be the "**Back-Up Bidder**." Within one (1) business day after conclusion of the Auction, the Successful Bidder, the Back-Up Bidder and the Debtor shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid and the Back-Up Bid were made (subject, in the case of the Debtor, to the qualifications set forth in "Acceptance and Termination of Qualified Bids" below).

THE SUCCESSFUL BID(S) SUBMITTED AT THE AUCTION SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER. IF THE SUCCESSFUL BID AND BACK-UP BID ARE APPROVED PURSUANT

TO THE SALE ORDER, THE SUCCESSFUL BID SHALL BE BINDING, AND THE BACK-UP BID SHALL BE BINDING UNTIL 20 DAYS AFTER ENTRY OF THE SALE ORDER. EACH QUALIFIED BID THAT IS NOT THE SUCCESSFUL BID OR THE BACK-UP BID AS APPROVED BY THE BANKRUPTCY COURT AT THE SALE HEARING SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

<b><u>Acceptance And Termination Of Qualified Bids</u></b>

The Debtor intends to sell the Assets to the Successful Bidder upon the approval of the Successful Bid and the Back-Up Bid(s) by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Successful Bid and Back-Up Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

<b><u>Sale Hearing</u></b>

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, **2017 at 9:00 [a].m. (prevailing Central Time)**[6] and may be adjourned or rescheduled without notice. At the Sale Hearing, the Debtor will seek Bankruptcy Court approval of the Successful Bid and the Back-Up Bid. Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Proposed Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the sale because of the breach or failure on the part of the Successful Bidder, the Back-Up Bidder will be deemed the new Successful Bidder and the Debtor shall be authorized, but not required, to close with the Back-Up Bidder on the Back-Up Bid without further order of the Bankruptcy Court.

<b><u>Terms Of Sale</u></b>

Except as and to the extent provided in the Purchase Agreement, and subject to Bankruptcy Court approval, the sale of the Assets shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature or description by the Debtor or its agents, and by submitting a bid, each bidder is deemed to acknowledge and agree to the foregoing. Subject to Bankruptcy Court approval and the terms of the Purchase Agreement, all of the Debtor's right, title and interest in and to the Assets shall be sold free and clear of all liens, claims, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity (collectively "Interests"), to the fullest extent available under Bankruptcy Code section 363 with such Interests, if any, attaching to the net proceeds of the sale of the Assets in the same order, dignity and priority as existed at the commencement of the bankruptcy cases and subject to certain FCC and Industry Canada and other conditions set forth in the Purchase Agreement. Notwithstanding the foregoing, the Debtor reserves the right

---

[6] Subject to Bankruptcy Court availability, the Sale Hearing date is to be two (2) business days after the Auction.

to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Interests under applicable law.

## Return Of Deposits

Each Deposit submitted pursuant to the Bid Procedures will be held in escrow by the Escrow Agent and will not become property of the Debtor's estate absent further order of the Bankruptcy Court. Within two Business Days following the approval by the Bankruptcy Court of the Successful Bidder and Back-Up Bidder, the Escrow Agent shall return the Deposits made by any other Qualified Bidders and the Escrow Agent shall return the Back-Up Bidder's Deposit within two business days after the Back-Up Bid is terminated in accordance with the provisions herein.

If the Successful Bidder or the Back-Up Bidder shall fail to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder (or Back-Up Bidder, as the case may be), the Debtor shall be entitled to retain such Successful Bidder's (or Back-Up Bidder's, as the case may be) Deposit, in addition to other additional remedies available to the Debtor under applicable law. The Debtor shall credit the Deposit of the Successful Bidder or the Back-Up Bidder towards the purchase price at the time of funding pursuant to the terms of the Purchase Agreement.

## Reservation Of Rights

The Debtor reserves the right to modify the Bid Procedures at or prior to the Auction if such modification will better promote the goals of the Auction, is not materially inconsistent with any prior order of the Bankruptcy Court and the Debtor deems such modifications consistent with the performance of their fiduciary obligations.